WILLIAMS *vs.* THE STATE.

[ INDICTMENT FOR ASSAULT WITH INTENT TO RAVISH.]

1. *Evidence; what irrelevant.*—On the trial of an indictment for an assault with intent to commit a rape, an offer to prove that the father, after having been told by his daughter of the assault having been committed on her, talked privately with the accused on the same day, and in the conversation no allusion was made to said assault, although it was proposed to prove, in connection with other evidence, that the day after the alleged assault the father shot the accused in a difficulty about throwing stones by the accused at the father's children, and not

about the assault, there being no question of impeachment raised, and the purpose for which the evidence was offered not stated, such offered proof is irrelevant, and should be rejected for that reason.

2. *Jury, separation of ; what, not sufficient to authorize discharge of defendant.*—In such a case, if, after the indictment is read to the jury, and the accused has pleaded not guilty, and after the evidence is closed, but before argument has commenced, the jury under the charge of the court, but without consent expressed or objection raised—without any thing being said about it by the accused or his counsel—are permitted to separate, such separation is not a cause for which the accused has a right to demand his discharge. Such separation, however, should be considered a very strong reason for granting a new trial, not only in capital, but in all felonies.

APPEAL from Circuit Court of Lauderdale.
Tried before Hon. JAMES S. CLARK.

The appellant was indicted for an assault with intent to ravish, &c. On the trial, as appears from the bill of exceptions, the defendant offered to prove " that the father of the girl assaulted, after he was told by her of the assault, conversed privately with the defendant on the same day, and that in that conversation no allusion was made to said assault, and proposed to prove in connection with other evidence, that two days after the alleged assault, the father of the girl shot the defendant in a difficulty about throwing stones by the defendant at the father's children, and not about the assault on the girl. The court refused to receive this proof, and the defendant excepted."

"After the indictment had been read to the jury, and the defendant had pleaded not guilty, and after the evidence had been closed, but before the argument had commenced, the jury, under the charge of the court, but without consent expressed or objection raised; without any thing being said about it by defendant or his counsel; were permitted to separate, and upon the reassembling of the jury, the defendant, by his counsel, moved the court to discharge the defendant upon the fact that the jury had been permitted to separate, and did separate, without his consent or that of his counsel; which motion the court overruled, and defendant excepted."

The errors assigned are :

1st, Refusing to allow the proof offered.

2d, Refusing to discharge the defendant after the unauthorized separation of the jury.

E. A. O'NEAL, for appellant.—1. This case is similar, in principle, to *Ex parte Vincent,* 43 Ala. 402.

2. The present practice in England, and in a portion of the American courts, is to sustain the verdict when the separation has been inadvertent, and no abuse had resulted from it. On the other hand, it has been considered in several instances that the mere separation, withour permission, is in itself *prima facie* reason for a new trial.

The latter doctrine was pressed with great vigor by the early common law authorities in all cases, both civil and criminal; it being agreed, that by the law of England, a jury, after evidence given upon the issue, ought to be kept together in some convenient place, "without meat or drink, fire or candle," says Lord Coke. In all capital cases, it would seem that under no circumstances will separation be permitted until a verdict is agreed on; and so far as has been seen, this doctrine has been pushed in several instances in this country; that it has been held, that if a jury, when once charged and sworn, be discharged, except in case of such necessity as may be considered as the act of God, such discharge is a bar to a second trial.—3d ed. Whar. Am. Cr. Law, p. 1009.

A verdict of conviction in a very late case of felony was set aside when, pending the trial and before the testimony was closed, five of the jury received permission to retire from the court room, accompanied by the sheriff, and another juror thereupon left the jury box without the knowledge of the court, passed out of the court room through a crowd of persons collected about the door, and remained absent a few minutes, after which he returned into court, having, as he deposed, held no communication whatever with any person whatever during his absence, but not having been in charge of the sheriff, or even seen by him.—3d ed. Am. Cr. Law, Wharton, p. 1010 ; *Oversee v. Com.,* 1 Robinson, 756. That the accused is to be convicted or acquitted by the evidence given in his presence; that the minds of those who are to decide are before the

trial to be free from pre-judgment; that in the course of the trial no impression ought to operate upon their minds except what is derived from the testimony given in court; that the jury shall continue impartial and unbiased; that to ensure this, they should not be allowed to separate, are points acknowledged by law.—*Va. Cases*, 1, 2, p. 302. See, also, *McClain v. The State*, 10 Yerger, 241 ; *Monroe v. The State*, 5 Georgia, 85 ; *Jarnigan v. The State*, 10 Yerger, 529.

In all felonies, a separation from day to day, *with the prisoner's consent*, vitiates the verdict.—*Wiley v. State*, 1 Swann (Tenn.) 256.

The constitutional guaranty of trial by jury is broken by the lawless discharge of the jury after they hear some evidence, and before they render a verdict. When a jury is impanneled for the trial of an indictment, the defendant then acquires new rights which the court will protect. When once put on his trial and a jury sworn for that purpose, it is his right to have them pass upon his case, and the court has no power to permit them to disperse without his consent.—*Macauly v. State*, 26 Ala. 140 ; *Commonwealth v. Tuck*, 20 Pick. 356 ; *Mounts v. State*, 14 Ohio, 295 ; *Mahala v. State*, 10 Yerger, 235 ; *Ned v. State*, 7 Por 187 ; see, also, *Bell v. State*, 44 Ala.

In the case of *Barrett v. State*, (35 Ala. 415,) it is decided that it is much the more prudent and safe course, for the circuit judges to protract the session of the court to the end of the term prescribed by law, when the duration of the term is fixed, unless some great and overruling necessity requires a different course, or unless the prisoner consents to a discharge of the jury.—See *McCauly v. State*, 26 Ala. 139.

In the case at bar, a jury had been impanneled and sworn, a sufficient indictment read and pleaded to by defendant, and the dispersion of the jury amid the crowd of by-standers in and around the court-room, without the consent of the defendant, was a clear violation of his rights, and works his acquittal. When does the "jeopardy," in the meaning of the constitution, commence in the trial of the prisoner?

If in a particular case it has attached for a moment only,

and afterwards there is such a lapse in the proceedings as to create a new jeopardy, the defendant has thereby obtained the right to demand his discharge; and neither can the proceedings be carried on against him further, nor new proceedings be instituted.—1 Bishop's Crim. Law, § 855, (4th edition.)

When the jury, being full, is sworn and added to the other branch of the court, and all the preliminary things of record are ready, the prisoner has reached the jeopardy, from the repetition of which our constitutional rule protects him. During the trial, the prosecuting officer is not authorized to enter a *nolle prosequi;* or if he enters it, even with consent of the judge—or if he withdraws a juryman, and so stops the hearing, the legal effect is an acquittal.— 1 Bish. Crim. Law, § 858, (4th edition); *The State v. Crips,* 8 Ala. 951; *State v. I. S. S.,* 4 Tyler, 178; *State v. Davis,* 4 Blackford, 345; *Commonwealth v. Goodenough,* Shacker's Crim. Cases, 132.

### SEPARATIONS OF THE JURY.

The cases may be placed in two general classes:

1st. Where any separation of the jury, except by consent, or in cases of such violent necessity as may be considered the act of God, is held a bar to all subsequent proceedings.

2d. When it is held that the discharge of the jury is a matter of pure discretion for the court, and that when in the exercise of a sound discretion it takes place, it presents no impediment to a second trial.

The first view, which is clearly made in conformity with the constitution, has been taken by the courts of Pennsylvania, Virginia, North Carolina, Tennessee and Alabama. Amer. Crim. Law, (3d ed.) pp. 264, 265.

The court will preserve "with *fear and jealousy,*" and will not expose the trial by jury in criminal cases to such risk of contamination, as arises from the separation of the jury in this case.—1, 2 *Virginia Cases,* 305.

From the mode in which collusion and tampering is usually carried on, such circumstance is generally known to no person, except the one tampering and the juror tam-

pered with. If you question either, he must criminate or declare himself innocent, and you lay before him an inducement not to give correct testimony.

By permitting the jury to separate without necessity, and without the consent of the prisoner, and that their verdict shall stand, you break down the great barriers of oppression, especially to *that part of our population to which this appellant belongs.* Every danger, and particularly in such a case as this, should be watched and opposed in the beginning.—1, 2 *Virginia Cases,* 305.

In *Cobia v. The State,* 16 Ala. 781, (an indictment for murder,) this court held that the discharge of the jury before verdict rendered must be understood to mean a *legal discharge;* and that if the prisoner be put upon his trial upon a sufficient indictment, and the evidence is submitted to the jury, the court can not *arbitrarily interfere* and *arrest* by discharging the jury; and if the court should discharge the jury before they deliver their verdict without a *sufficient legal reason* for doing it, the prisoner shall never be tried again.—*McCauley v. State,* 26 Ala. 138.

Every decision of this kind rests upon this solid ground, that such decision is essential to preserve inviolate to the prisoner *the right of trial by jury,* as guaranteed by the constitution. This right can not mean less than the right to have the deliberations of the jury, when once they have begun the trial and heard any evidence, continued until the occurrence of a sufficient legal reason for their discharge, and the right to have, during the entire period of such continuance, the chance of a verdict of acquittal at the hands of that jury.—*McCauley v. State,* 26 Ala. 138; *Grogan v. State,* 44 Ala.; *Ned v. State,* 7 Porter, 188.

JOHN W. A. SANFORD, Attorney-General, *contra.*

PECK, C. J.—The object or purpose of the evidence offered by the prisoner and rejected by the court, is not stated. We are unable to see that it would have had any legitimate influence to prove the innocence of the accused. We think it was commendable prudence on the part of the father to avoid any conversation with the accused as to

violence which the daughter had told him had been offered or committed upon her person, by the accused. It might, and probably would have led, to a breach of the peace.

As it does not appear that any question of impeachment was raised, or for what purpose the proposed evidence was offered, it was irrelevant, and was properly rejected for that r· ason. Nor are we able to see that the case is bettered by proposing to prove, in connection with the offered evidence, that the father, the day after the alleged assault, shot the accused in a difficulty about throwing stones at the children of the father, and not about the assault upon the daughter.

2. The second exception taken on the trial presents a question of more difficulty. It is thus stated in the bill of exceptions : "After the indictment had been read to the jury, and the defendant had pleaded not guilty, and after the evidence had been closed, but before the argument had commenced, the jury, under the charge of the court, but without consent expressed or objection raised; without any thing being said about it by the defendant or his counsel, were permitted to separate; and that, upon the reassembling of the jury, the defendant, by his counsel, moved the court to discharge the defendant upon the fact that the jury had been permitted to separate, and did separate without his consent or that of his counsel; which motion the court overruled, and the defendant excepted."

I am not aware that this question has ever been decided in this State. I should be sorry to see the action of the court, in this case, ripen into a practice, but I am not prepared to hold, even in a capital case, that it would be sufficient cause to require the prisoner to be discharged. In my opinion, it should be considered a very strong, if not a conclusive reason, for setting aside the verdict and granting a new trial, not only in capital, but also in cases of all felonies.

In what cases the jury may be permitted to leave the presence of the court, unattended by an officer, and separate, upon examination it will be found that no settled, uniform rules of practice, upon this subject, prevail in the courts of the several States in this country, where the

question appears to have arisen. In some, a more strict, and in others, a more liberal practice obtains.

Mr. Bishop, in his valuable work on Criminal Procedure, vol. 1, § 814, says : " It is a doctrine prevailing almost everywhere in this country, that, in capital cases, the jury can never be permitted to leave the presence of the court, even on adjournment over night, except in charge of a sworn officer, and then they must be kept together." Yet, he says, " in South Carolina it is held to be within the discretion of the court, even in capital cases, to permit the jury to separate at the adjournment from day to day." The like doctrine and practice appear to prevail in Connecticut. This author also says : " In some of the States, the rule which forbids the court to permit a separation, extends to felonies not capital."

This we think the better and safer practice, and we recommend it as a rule for the government of the courts in this State. We have not been able to find any case, either in England or this country, where it has been held that the permission of the court, even against the consent of the accused, to let the jury separate after the trial has commenced and witnesses examined, was a sufficient cause for which the accused had a right to demand his discharge. That was the motion in this case, and we think it was properly overruled.

Let the judgment of the court below be affirmed.