HARRIS, Presiding Judge.
Appellant was indicted for murder in the first degree. Throughout the trial proceedings appellant was represented by court appointed counsel and at arraignment pleaded not guilty. The jury returned a verdict of murder in the second degree and fixed his sentence at fifteen years imprisonment in the penitentiary. Appellant gave notice of appeal and was furnished a free transcript. New counsel was appointed to represent appellant on appeal.
During the early morning hours of July 25, 1978, appellant shot and killed Ricky O’Neal Vinson by shooting him twice with a .22 caliber rifle. He was shot in the chest area and bled to death at the scene.
Ronald Easterling testified that he and the victim went to a place called the “Co-hole” with their dates on the night of the killing. We gather from the record that the “Co-hole” was a place where young people frequently went to drink beer and smoke marijuana. Numerous young couples were present that night. Some were drinking beer and not smoking marijuana and some were doing both. The people in Easterling’s party arrived at the “Co-hole” around 11:30 p. m. and a short time later appellant and his brother Ray arrived.
*426 Appellant and his brother had talked to Easterling and the victim earlier that day trying to determine the identity of two boys who had jumped on and beat up Ray Woods a few days earlier, but they did not get the desired information as Easterling and Vinson did not know anything about the fight. Appellant and his brother decided to go to the “Co-hole” to pursue further the identity of the boys who had jumped on Ray Woods. Appellant carried a .22 caliber rifle in the car and Ray Woods had a knife.
According to Easterling he got into an argument with Ray Woods and Ray Woods drew his knife. At this point Easterling and the others started backing away and appellant got out of his car and started shooting. The victim was unarmed and was just standing when he was fatally shot. After the shooting appellant and his brother got in their car and fled the scene. As they were fleeing appellant fired another shot in the air.
Patricia Little testified that she went to the “Co-hole” the night of the killing and talked to appellant and his brother, Ray Woods; that a short time later Easterling, the deceased, and their dates arrived and an argument occurred between Easterling and Ray Woods; that Ray pulled a knife and appellant started shooting. Other witnesses testified to substantially the same facts leading up to and culminating in the shooting death of young Vinson.
Dr. Floyd Boudreau, III testified that he was a pathologist and the Deputy Coroner of Mobile County. He had performed several thousand autopsies. He performed the autopsy on the victim and determined he bled to death as the direct result of two gunshot wounds to the body. He removed two fragmented and distorted bullets from the body of the deceased.
At the conclusion of the State’s case appellant made a motion to exclude on four grounds: (1) that the State failed to prove jurisdiction; (2) failed to prove venue; (3) failed to prove each and every material element of those (four) degrees of homicide, and (4) that the State has failed to prove the prima facie case as to each degree of homicide. The motion was overruled and denied.
Ray Woods testified that he picked up his brother, Scott Woods, at his uncle’s house and they went to Gunnerson Creek (where the “Co-hole” is located). He and his brother met during the day and drank beer and smoked marijuana together. He said they arrived at the “Co-hole” about 10:30 p. m. Relating the events concerning the argument he stated that Ronald Easterling had drawn back his fist to hit him and that Ricky Vinson had pulled out a knife to cut him but that Vinson never actually used the knife to cut him. At this point Scott shot Vinson. He stated that Scott fired twice at Vinson and once in the air.
Appellant testified that after arriving at the “Co-hole” that night he saw Ray Woods and Easterling arguing but the argument ended and they shook hands. He then stated that the deceased told Ray Woods they had something to get settled and the deceased got out his knife and started walking towards Ray. He further testified that he fired the rifle three times. The rifle was not loaded at first, but appellant said he loaded it with seven bullets after arriving at the “Co-hole.” He stated that he again fired the gun as he and his brother were leaving so that nobody would follow them. They sped from the scene without checking on the condition of the victim.
He further testified that he and his brother had drank beer and smoked marijuana with some people before going to the “Co-hole,” and they smoked marijuana with some girls at the “Co-hole” before the shooting.
Appellant raises two propositions on this appeal in which he claims the trial court committed reversible error: (1) the trial court did not instruct the jury on reasonable doubt, and (2) the Court erred in denying his motion to exclude the State’s evidence for failure to prove jurisdiction and venue. We disagree with appellant’s contention and affirm the case.
The record reflects that at the conclusion of the oral charge appellant’s coun *427 sel told the court that he did not have any exceptions to make.
In Holliday v. State, Ala.Cr.App., 346 So.2d 26, this court said:
“Appellant’s complaint as to a portion of the court’s charge on the subject of reasonable doubt comes too late. Oral instructions, to which no objection is made or exception taken, cannot be reviewed on appeal.”
See Allison v. State, 281 Ala. 193, 200 So.2d 653; James v. State, 57 Ala.App. 140, 326 So.2d 669; Clifton v. State, Ala.Cr.App., 359 So.2d 853.
Appellant requested twenty-six written charges and the Court gave twenty-four of them. The two requested charges were affirmative in nature and properly refused. Many of the given charges adequately covered the law on reasonable doubt.
Appellant’s second contention is not supported by the record. There was more than competent evidence to establish the venue of the crime.
Detective Willie Edward Estes was assigned to investigate this crime. He testified, in pertinent part:
“Q. All right, sir. On the night of July 25th, 1978, did you have occasion to go to Gunnerson Street in Mobile County?
“A. Yes, sir.
“Q. About what time was this?
“A. I arrived there at one thirty-five A.M.
“Q. Would you tell the jury what you found when you got there, please, sir?
“A. Yes, sir. At the time I arrived there was a white male lying on his back about fifty to seventy-five yards from the creek. The subject was dead. He was lying next to a yellow Maverick automobile.”
The officer then identified five photographs portraying the victim’s body and the crime scene. This testimony was sufficient to prove the body of the victim was found in Mobile County.
Ronald Easterling testified, in part, as follows:
“Q. Do you recall that night?
“A. Oh, yes, sir.
“Q. Do you recall where you were?
“A. At the Co-hole.
“Q. Okay. And is that located in Mobile County?
“A. Yes, sir.”
In Willcutt v. State, 284 Ala. 547, 226 So.2d 328, the Supreme Court held:
“While proof of venue is essential to a conviction, it, like any other fact in the case, may be established by circumstantial evidence; and when the State offers evidence tending to show that the crime was committed within the jurisdiction of the court, the question becomes one for the jury.”
In White v. State, 55 Ala.App. 58, 312 So.2d 639, this Court held the following testimony was sufficient to establish venue:
“Q. Did you participate in the investigation concerning a reported robbery of the Delchamps Store on Pleasant Valley Road?
“A. Yes, sir.
“Q. Is that in Mobile, Alabama, sir?
“A. Yes, sir.”
There is no error in the record and the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.